UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN EMBREY,

    Plaintiff,

v.

M. WALIK, et al.,

    Defendants.

No. 2:17-cv-1973 MCE AC P

ORDER

I. Introduction

Plaintiff is a California state prisoner who proceeds pro se with a complaint filed pursuant to 42 U.S.C. § 1983, a request for leave to proceed in forma pauperis filed pursuant to 28 U.S.C. § 1915, and a request for appointment of counsel. This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the following reasons, the undersigned grants plaintiff's request to proceed in forma pauperis, denies plaintiff's request for appointment of counsel, finds the complaint unsuitable for service in its present form, and grants leave to amend.

II. In Forma Pauperis Application

Plaintiff has submitted affidavits and a prison trust account statement that make the showing required by 28 U.S.C. § 1915(a). See ECF Nos. 5, 8,10. Accordingly, plaintiff's request to proceed in forma pauperis will be granted.

Plaintiff must nevertheless pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated to make monthly payments of twenty percent of the preceding month's income credited to plaintiff's trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

### III. Screening of Plaintiff's First Amended Complaint

#### A. Legal Standards for Screening Prisoner Civil Rights Complaints

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).

Rule 8 of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly at 555). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" Iqbal at 678 (quoting Twombly at 570). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

"A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal quotation marks omitted)). See also Fed. R. Civ. P. 8(e) ("Pleadings shall be so construed as to do justice."). Additionally, a pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

### B. Plaintiff's Allegations

The court has screened plaintiff's complaint, ECF No. 1, in light of his subsequently submitted exhibits, ECF No. 13. Should this case proceed on an amended complaint, the court will then direct the Clerk of Court to electronically attach plaintiff's exhibits to the operative complaint.

Plaintiff alleges that his left hand was injured on March 23, 2017, when he was incarcerated at California State Prison Sacramento (CSP-SAC). Plaintiff's cell door was slightly ajar to receive his nightly medication. At approximately 5:20 p.m., as plaintiff reached for his medication from RN Abraham, defendant CSP-SAC Correctional Officer (CO) M. Walik, who was in the tower, "shut the cell door on plaintiff's hand causing injury and extreme pain." ECF No. 1 at 11. Abraham yelled up to Walik to open plaintiff's door, as did defendant CO P. Ngo, and Walik opened the door.

Abraham looked at plaintiff's hand, which was swollen, finished his medication rotation, then took plaintiff to the RN office. Abraham took plaintiff's vitals, called for a doctor but did not get an answer. At about 6:15 p.m., defendant Ngo escorted plaintiff to "B-Facility Sallyport Medical: where RN Anna also called the doctor." Id. at 13. The doctor ordered an x-ray for the next day, and instructed the nurse to put on a splint and give plaintiff Tylenol and ice. ECF No. 13 at 25. "RN Anna wrapped plaintiff's hand with an[] ace bandage and put a splint on it because x-rays on A-Facility was closed." ECF No. 1 at 13. Plaintiff was given Tylenol and ice and

returned to his cell where he was in pain all night. Id. at 14.

Plaintiff obtained x-rays of his left hand the next day, on March 24, 2017, at San Joaquin General Hospital. The x-rays revealed soft tissue swelling of the dorsum of plaintiff's hand but no acute fracture, subluxation or osseous abnormality. ECF No. 13 at 11. Plaintiff was fitted with a thumb spica splint and prescribed additional Tylenol. Id. at 12-5. Plaintiff had a follow-up medical appointment three days later, on March 27, 2017. Id. at 20. At a further follow-up medical appointment on April 26, 2017, the provider noted continued swelling and tenderness of plaintiff's left hand but with improvement and with full range of motion. Id. at 24. Plaintiff was advised to continue wearing the splint when active, and to remove the splint to do hand exercises; plaintiff was prescribed Naproxen. Id.

Plaintiff identifies three defendants: COs Walik and Ngo, and former CSP-SAC Warden Baughman. Plaintiff broadly claims that defendants were deliberately indifferent to his Eighth Amendment rights, particularly his right to be free from cruel or unusual punishment. Plaintiff also alleges that defendants violated various state statutes and regulations. ECF No. 1 at 3, 9. Plaintiff alleges generally that defendant Baughmen was "legally responsible for the operation" of CSP-SAC, id. at 7, and that he and the other defendants "knew or should have known that their conduct, attitudes and actions created an unreasonable risk of serious harm to plaintiff," id. at 8, 9. Plaintiff alleges that defendant Ngo "failed to protect" him because *had* Ngo "opened the tray slots [rather than dispense medication through the opened cell door] then this injury wouldn't have never happened," id. at 11. Plaintiff alleges that defendant Walik did not open the door until Ngo yelled at him after Ngo heard RN Abraham yelling. Id. at 11-2.

Plaintiff alleges that he "is suffering and will continue to suffer physical injuries in the form of damage to his left hand and left arm. Problems with balance and other injuries." ECF No. 1 at 15. He alleges that "since the day my hand was smashed in the cell door I have not been able to fully use it." Id. at 3. Plaintiff also alleges that he is a participant in CDCR's mental health services programs, and that this incident caused and continues to cause him "injuries in the form of pain and suffering, shame, humiliation, degrading, emotional distress, embarrassment, mental distress and other injuries." Id. at 3, 15.

4

Plaintiff seeks "[a] declaration that the acts and omissions described herein violated plaintiff's right[s] under the constitution and laws of the United States," as well as compensatory and punitive damages. ECF No. 1 at 6, 16.

### C. Analysis

Plaintiff does not challenge the quality of health care he received for his injured hand, only the fact of his injury. Moreover, it appears that plaintiff acknowledged to both medical and correctional staff that the incident was accidental. See e.g. ECF No. 13 at 20 (on March 27, 2017, three days after the incident, a nurse reviewing plaintiff's injury noted that "Pt. said he got his hand smashed by cell door by accident on Friday"); id. at 9 (Second Level Appeal decision recounted plaintiff's statement "it probably was an accident").

An accidental injury does not constitute an Eighth Amendment violation, because an accident cannot satisfy the "culpable state of mind" requirement. To state a cognizable deliberate indifference claim under the Eighth Amendment, a prisoner must plausibly allege that a prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," evidence must exist to show the defendant acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis and citations omitted). An accident by definition involves no more than negligence (failure to be careful), and negligence does not violate the Eighth Amendment even when it causes serious injury. Farmer, 511 U.S. at 835-36.

Moreover, plaintiff's general allegations against former CSP-SAC Warden Baughman do not support liability. A supervisor cannot be held liable for the actions of a subordinate under a respondeat superior theory; a supervisor can only be liable for his or her own misconduct. See Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009) (citing Iqbal, 556 U.S. at 676-77; and Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009)). To state a cognizable claim against a supervisor, a plaintiff must plausibly allege a causal link between the supervisor's own

conduct and the claimed constitutional violation, that is, allegations that the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Because plaintiff's allegations against Baughman do not suggest that he had any role in the closing of the cell door on plaintiff's hand, or personal knowledge of the practice of handing medications through a cell door rather than a tray slot, defendant Baughman is subject to dismissal from this action.[1]

Similarly, plaintiff's allegations against defendant Walik reflect no awareness on his part that closing plaintiff's cell door could result in injury to plaintiff. The complaint states that Walik opened the cell door upon hearing that plaintiff's hand was stuck in it. That fact and plaintiff's subsequent comments that the incident appeared to be accidental are both inconsistent with liability. These facts do not support an inference that Walik was aware of a substantial risk of serious risk of harm to plaintiff when he closed the cell door. The facts alleged establish at most that Walik acted negligently, which does not support liability.

Plaintiff's allegations against defendant Ngo are more specific but also fail to include facts required to state a cognizable Eighth Amendment claim. Plaintiff claims that Ngo "failed to protect" him by allowing medication to be dispensed through open cell doors rather than tray slots. Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see also

---

[1] There is an exception, not applicable here based on the allegations of the instant complaint. "To maintain a § 1983 claim against a public entity defendant, or supervisors not personally involved in the alleged violation, a plaintiff must allege that his or her constitutional injury resulted from a policy, practice or custom of the local entity." Avalos v. Baca, 517 F. Supp. 2d 1156, 1162 (C.D. Cal. 2007) (citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 691 (1978)), aff'd, 596 F.3d 583 (9th Cir. 2010). "There are three ways to meet the policy, practice, or custom requirement for municipal liability under § 1983: (1) the plaintiff may prove that a public entity employee committed the alleged constitutional violation pursuant to a formal policy or a longstanding practice or custom, which constitutes the standard operating procedure of the local government entity; (2) the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official government policy; or (3) the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action. Avalos at 1162 (citing Telemundo of Los Angeles v. City of Los Angeles, 283 F.Supp.2d 1095, 1100 (C.D. Cal. 2003)).

6

DeShaney v. Winnebago County, 489 U.S. 189, 199-200 (989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."). A "failure to protect" claim under the Eighth Amendment requires a showing that the injury occurred due to the defendant's "culpable state of mind." "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 837 (citations omitted). The facts presented here suggest no more than a negligent failure to ensure the safest means of medication delivery and prevent accidents such as plaintiff experienced.

For all these reasons, plaintiff has not stated a claim under the Eighth Amendment against any defendant. Accordingly, the complaint will not be served. Rather than recommending dismissal of this action for failure to state a claim, the undersigned will give plaintiff an opportunity to amend his complaint. Plaintiff is cautioned that he should consider the legal principles explained here. If an amended complaint does not include information showing that the incident involved deliberate indifference rather than mere negligence, including as to the alleged failure to protect, the action will be dismissed.

IV.     Request for Appointment of Counsel

Plaintiff requests appointment of counsel on the ground that the screening of this case under 28 U.S.C. § 1915A was delayed for more than two years. ECF No. 17. Plaintiff states, "Why should I be put on hold? I need a civil lawyer put on my case." ECF No. 17 at 1.

District courts lack authority to require counsel to represent indigent prisoners in Section 1983 cases. Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989). In certain exceptional circumstances, the court may request an attorney to voluntarily represent such a plaintiff. See 28 U.S.C. § 1915(e)(1). Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990). When determining whether "exceptional circumstances" exist, the court must consider plaintiff's likelihood of success on the

merits as well as the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. See Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (district court did not abuse discretion in declining to appoint counsel). The burden of demonstrating exceptional circumstances is on plaintiff. Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances warranting the appointment of voluntary counsel. Id.

Plaintiff's stated reason for requesting appointment of counsel does not indicate the presence of any exceptional circumstance. Moreover, review of plaintiff's complaint reveals that plaintiff is fully capable of articulating his claims pro se. The case is not complicated, and the likelihood of success on the merits remains unknown. For these reasons, the undersigned does not find the requisite exceptional circumstances warranting appointment of counsel at this time.

### IV. Leave to File a First Amended Complaint

For the reasons set forth above, plaintiff's complaint is subject to dismissal for failure to state a cognizable claim. See 28 U.S.C. § 1915A. However, plaintiff will be granted leave to file a First Amended Complaint (FAC). Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. See also Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (an amended complaint supersedes the prior complaint). Therefore, in a FAC, the facts and claims against each defendant must be sufficiently alleged. Rizzo v. Goode, 423 U.S. 362, 371 (1976)

### VI. Summary for Pro Se Plaintiff

You are granted in forma pauperis status and will pay the filing fee over time with automatic deductions from your prison trust account.

Your request for appointment of counsel is denied because you have not identified "exceptional circumstances."

The court has screened your complaint. The facts you have presented about your injury make it look like an accident. An accident does not violate your constitutional rights, even if you are seriously hurt. If defendants Walik and Ngo caused your injury by not being careful enough, that would be negligence. Negligence will not support an Eighth Amendment claim. If you have

additional facts to add that would show your injury was caused by deliberate indifference rather than negligence, you may add those facts in a First Amended Complaint. If you choose to file a First Amended Complaint, you must do so within forty-five (45) days after the filing date of this order. Failure to timely file a First Amended Complaint will result in a recommendation that this action be dismissed without prejudice.

### VII.   Conclusion

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's request to proceed in forma pauperis, ECF No. 5, is granted.

2. Plaintiff's second-filed motion to proceed in forma pauperis, ECF No. 8, is denied as moot.

3. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

4. Plaintiff's request for appointment of counsel, ECF No. 17, is denied without prejudice.

5. Plaintiff's complaint, ECF No. 1, has been screened and determined not to state a claim. Accordingly, it will not be served.

6. Plaintiff is granted leave to file a First Amended Complaint (FAC), on the form provided herewith, within forty-five (45) days after the filing date of this order, subject to the legal standards set forth herein. Failure to timely file a FAC will result in a recommendation that this action be dismissed without prejudice.

////
////
////
////
////

7. The Clerk of Court is directed to send plaintiff, together with a copy of this order, a copy of the form complaint used by prisoners in this district to pursue a civil rights action under 42 U.S.C. § 1983.

IT IS SO ORDERED.

DATED: April 14, 2020

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE